# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

**MICHAEL W. PHELPS**
**KATHERINE KARRES**
Nunn Law Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**THOMAS TODD REYNOLDS**
**JOSHUA J. RAUCH**
Mandel Horn McGrath & Reynolds PC
Carmel, Indiana



FILED

Aug 15 2012, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

MARY BARRIX and JOE BARRIX, JR.,       )
    Appellants-Plaintiffs,       )
           )
      vs.       )   No.  28A04-1202-CT-82
           )
KRISTOPHER JACKSON and GRAVES       )
PLUMBING CO. INC.,       )
           )
    Appellees-Defendants.       )

APPEAL FROM THE GREENE SUPERIOR COURT
The Honorable Dena A. Martin, Judge
Cause No. 28D01-0905-CT-228

**August 15, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Mary Barrix ("Mary") and Joe Barrix, Jr. ("Joe"; collectively, "the Barrixes") appeal the trial court's entry of judgment on the evidence against them and in favor of Kristopher Jackson ("Jackson") and Graves Plumbing Company ("Graves") (collectively "the Defendants").

We affirm.

**Issues**

The Barrixes challenge the trial court's entry of judgment on the evidence and present two issues for our review. We restate these as:

I.    Whether the trial court erred when it ruled inadmissible portions of a physician's deposition testimony because the medical records upon which his opinion was based were not authenticated; and

II.    Whether the trial court erred when it ruled inadmissible medical bills and portions of a physician's deposition testimony concerning those bills.

**Facts and Procedural History**

We take portions of our statement of facts from the Barrixes' complaint. The complaint alleged that on May 24, 2007, Mary was in a motor-vehicle collision with Jackson in Greene County. At the time of the collision, Graves employed Jackson, who was driving a vehicle within the scope of his employment with Graves. Mary was injured in the collision, and as a result of her injuries suffered medical expenses, lost wages, and other losses; Joe suffered loss of consortium.

In early 2009, the Barrixes retained William H. Fulton, M.D. ("Dr. Fulton"), a

2

neurologist, to perform a medical evaluation of Mary. On March 23, 2009, Dr. Fulton performed an evaluation of Mary's condition based upon his examination of Mary and the medical records forwarded to him by the Barrixes' counsel at the time, and concluded that Mary had suffered a 1% permanent partial impairment ("PPI") as a result of Mary's ongoing pain.

On May 4, 2009, the Barrixes filed suit against the Defendants for negligence.[1] On September 8, 2011, the trial court scheduled the case for a jury trial to be commenced on January 18, 2012.

On January 10, 2012, the parties conducted a deposition of Dr. Fulton, who was unavailable to testify at trial due to scheduling conflicts. During the deposition, counsel for the Defendants objected to testimony from Dr. Fulton concerning the content of the medical records upon which he based his evaluation of Mary's condition in early 2009, and each party objected to the introduction into evidence of various medical records of Mary.

On January 18, 2012, a jury trial commenced. After voir dire was conducted and a jury selected, the Defendants objected to the admissibility of Dr. Fulton's deposition and the medical records and bills upon which he based his opinion concerning Mary's injuries. After hearing oral argument and the Barrixes' offer of proof, the trial court sustained the Defendants' objection, at which time the Barrixes rested their case and stated that they would appeal the trial court's evidentiary ruling. The Defendants moved for judgment on the

---

[1] The Barrixes also filed suit against Mary's insurance carrier, Safe Auto Insurance Company, for failure to pay Mary's claim for uninsured/underinsured motorist coverage. On August 7, 2009, the Barrixes and Safe Auto stipulated to dismissal of Mary's insurance-related claim after entering into a settlement agreement. The trial court entered an order dismissing Safe Auto from the case the same day.

evidence, and the court granted the motion.

This appeal ensued.

## Discussion and Decision

<u>Admissibility of Evidence</u>

The basis for the Barrixes' appeal from the trial court's entry of judgment on the evidence is the trial court's rulings on the admissibility of Dr. Fulton's deposition testimony and the medical records and bills upon which he relied in reaching his opinion concerning Mary's condition. We review a trial court's decision on the admissibility of evidence for an abuse of discretion, which occurs when the decision is against the logic and effect of the facts and circumstances before the court. <u>Weinberger v. Boyer</u>, 956 N.E.2d 1095, 1104 (Ind. Ct. App. 2011), <u>trans. denied</u>. Even where the trial court's decision is erroneous, however, we will not reverse the judgment where the decision does not prejudice the substantial rights of a party. Ind. Trial Rule 61; <u>Weinberger</u>, 956 N.E.2d at 1104.

Nor will we reverse where a party has invited error. A doctrine grounded in estoppel, "[u]nder this doctrine, 'a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct.'" <u>Witte v. Mundy ex rel. Mundy</u>, 820 N.E.2d 128, 133 (Ind. 2005) (quoting <u>Evans v. Evans</u>, 766 N.E.2d 1240, 1245 (Ind. Ct. App. 2002)).

### *Admissibility of Medical Records and Testimony Thereon*

In challenging the entry of judgment on the evidence, the Barrixes first argue that the trial court erroneously excluded the portions of Dr. Fulton's testimony that relied upon

4

medical records that had not been authenticated pursuant to Evidence Rule 803(6).

Evidence Rule 803(6) stands as an exception to the general rule that precludes admission of hearsay evidence. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is inadmissible except where our rules of evidence provide for admissibility. Evid. R. 802.

Among the numerous exceptions to the hearsay rule is the business records exception. That exception provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Evid. R. 803(6).

But "even records that are not excluded by the hearsay rule must also be otherwise admissible." Estate of Dyer v. Doyle, 870 N.E.2d 573, 579 (Ind. Ct. App. 2007) (citing Wilkinson v. Swafford, 811 N.E.2d 374, 390 (Ind. Ct. App. 2004), abrogated on other grounds by Willis v. Westerfield, 839 N.E.2d 1179 (Ind. 2006)), trans. denied. To be admissible under Rule 803(6), a business record must also be authenticated pursuant to Evidence Rule 901, which provides that "authentication or identification as a condition

precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(a). Thus, to admit business records, "the proponent of the exhibit may authenticate it by calling a witness who has a functional understanding of the record keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document," Rolland v. State, 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006), or by any other evidence (e.g., an affidavit) sufficient to satisfy the requirements of Rule 901.

Inadmissible evidence may nevertheless be relied upon for the purposes of expert-rendered opinion testimony:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. Experts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field.

Evid. R. 703.

There are limits to this, however, to the extent that a party proffers opinion testimony that is merely "'a conduit'" for placing physicians' diagnoses into evidence without meaningful opportunities for cross-examination. Schmidt v. State, 816 N.E.2d 925, 941 (Ind. Ct. App. 2004) (quoting Faulkner v. Markkay of Indiana, Inc., 663 N.E.2d 798, 801 (Ind. Ct. App. 1996), trans. denied), trans. denied. As the Indiana Supreme Court has recognized,

> some experts customarily gather information from a variety of other experts and authoritative sources and rely upon it in reaching their opinions. When an expert witness's own independent opinion is arrived at in this manner and it is introduced into evidence and the expert witness is subject to cross-examination, that part of the substrata of information which aided in the formation of the opinion, though hearsay in nature and though not falling

6

> within any hearsay exception, may nevertheless be admissible for use by the trier of fact in judging the weight of the opinion.

Miller v. State, 575 N.E.2d 272, 274 (Ind. 1991). However, such hearsay is inadmissible where it is merely a restatement of another's conclusion "as a conclusory answer to an ultimate fact in issue," such that the veracity of the statement is not "subject to the test of cross-examination." Id.

Thus, the Miller court concluded that a physician's opinion was inadmissible where that opinion was merely a repetition of another physician's statement without an independent evaluation of its veracity. Id. at 275. Relying on the Indiana Supreme Court's rationale in Miller, in Faulkner we affirmed a trial court's refusal to permit a chiropractor "to testify regarding information contained in medical reports … prepared by physicians" because the chiropractor was not himself a physician and thus "was not capable of being cross-examined" concerning the information in the reports. Faulkner, 663 N.E.2d at 800 (citing Miller, 575 N.E.2d at 274-75 (Ind. 1991)). We used a similar rationale to affirm a trial court's exclusion of the testimony of two non-physician expert witnesses, one a Ph.D.-credentialed toxicologist and the other an expert in field sobriety tests, through whom a criminal defendant sought to introduce information and opinion based upon a physician-prepared, one-page diagnostic medical report. Schmidt, 816 N.E.2d at 941.

Much of the dispute between the parties now before us centers upon the extent to which the deposition testimony of Dr. Fulton amounted to the type of testimony that is merely a conduit for admission of otherwise inadmissible hearsay evidence from Mary's medical records. The Defendants argue that much of Dr. Fulton's testimony was merely

7

repetition of the opinions (in the form of diagnoses) of other physicians, and thus at the very least those portions of Dr. Fulton's deposition testimony were properly excluded by the trial court. The Barrixes contend that the trial court's ruling improperly excluded portions of Dr. Fulton's testimony because Dr. Fulton relied upon unauthenticated medical records in rendering his opinion and offering his deposition testimony.

We agree with the Barrixes that the use of unauthenticated medical records that would otherwise be inadmissible is not a proper bar to the admissibility of an expert's opinion rendered from those records. We nevertheless find no reversible error in the trial court's decision to exclude from evidence Dr. Fulton's deposition testimony because any error the trial court committed was invited error.

Here, the Defendants orally raised a motion in limine objecting to the introduction into evidence of the medical records and medical bills that Dr. Fulton used to render his opinion on Mary's injuries. They based the objection on the ground that the documents were not properly authenticated and thus were inadmissible as business records. The Defendants further argued that Dr. Fulton's deposition was merely a conduit for introducing the medical records and bills. The Barrixes responded that the medical records were admissible as otherwise-inadmissible hearsay upon which Dr. Fulton relied in reaching an opinion, and that the bills were admissible under Evidence Rule 413, which provides that medical bills are admissible as prima facie evidence of the reasonableness of charges associated with medical diagnosis or treatment as "occasioned by an injury."

The trial court ruled that the medical records and bills were inadmissible. The parties

then began to dispute whether portions of Dr. Fulton's deposition testimony were admissible.

During argument, the following exchange occurred:

[COURT]: Okay. Because what you're telling the court is based upon me finding that the medical records as I understand that they were provided to this doctor, can not be then used through the doctor to be brought in?

[BARRIXES]: Correct.

[COURT]: And the medical bills because they were just produced to this doctor, and he reviewed them, and your [sic] wanting to bring them in directly through this doctor, and they haven't been authenticated because that is what's in that testimony then if the court will not allow that, then you won't even be admitting any of that?

[BARRIXES]: I'll be asking you to in the offer to prove, but I'm assuming you're, I'm assuming you're they'll [sic] be an objection and you'll sustain the objection. And my whole point is, that without the doctors testimony … then no evidence after that can support the Plaintiff's case.

***

[COURT]: Okay. Because, I guess, <u>my position is having not seen the deposition or read it, I can't tell you that I would exclude all of that deposition, but in you saying that its either all or none then, I guess, making that decision then the court would exclude all of it.</u> Is?

[BARRIXES]: <u>Yes.</u>

[COURT]: Okay.

***

[COURT]: Right. I just, my position is not that I would exclude all of the deposition, but you're saying that there, it wouldn't make any sense, or it wouldn't be your case if you didn't have the entire deposition, so?

[BARRIXES]: Yeah, yeah. <u>The only portions of the deposition that would support a jury verdict in this case are parts of the depositions that will that are being excluded due to the records.</u>

(Tr. at 34-36; emphasis added.)

9

We do not agree with the trial court's conclusion that the use of unauthenticated medical records provided to Dr. Fulton by counsel for the Barrixes rendered Dr. Fulton's testimony inadmissible. See Evid. R. 703 (providing for the admissibility of an expert opinion where the opinion is based upon otherwise inadmissible evidence). However, the Barrixes took the position that the admissibility of nearly the entirety of Dr. Fulton's deposition testimony rose or fell with the admissibility of the medical records. In their offer of proof, the Barrixes provided evidence that Dr. Fulton performed an examination of Mary, reviewed her records and bills, and rendered an opinion. At no point did the Barrixes direct the trial court to specific portions of Dr. Fulton's testimony that could have been admissible without requiring the admission into evidence of prior physicians' opinions and diagnoses. Cf. Miller, 575 N.E.2d at 274 (noting that the "substrata" of information that aided in the formulation of an opinion may be admissible, though summary restatement of another's conclusion is inadmissible).

Having thus afforded the trial court no opportunity to rule upon the specific portions of Dr. Fulton's testimony that may have been admissible, the Barrixes invited the trial court's error and are not entitled to relief. And as we will discuss further below, given the state of the evidence before the trial court at the time the Barrixes rested their case, we conclude that any error in the trial court's exclusion of Dr. Fulton's testimony or the underlying medical records was harmless and thus not a basis for reversal.

*Admissibility of Medical Bills*

We turn now to the admissibility vel non of Mary's medical bills.

10

As the Barrixes note in their brief before this Court, Evidence Rule 413 establishes that medical bills are relevant as prima facie evidence of the reasonability of charges incurred for treatment. As our Supreme Court has noted, however,

> Relevance is one issue. Hearsay and opinion issues remain. The hearsay rules generally prohibit the introduction of evidence of out-of-court statements to prove the truth of the matters asserted in those statements…. Medical bills already charged can usually be admitted over any hearsay objection either through testimony of the supplier [of medical treatment] as business records under Indiana Rule of Evidence 803(6) or through testimony of the patient to refresh memory under Rule 803(5).

Cook v. Whitsell-Sherman, 796 N.E.2d 271, 278 (Ind. 2003).

Here, the Barrixes sought to introduce into evidence medical bills that were not introduced through a medical provider as a business record and were not authenticated by affidavit as a business record. The Barrixes now argue that Mary "received the bills," "would have knowledge of the charges made for her care," and thus "[t]here was no need that the bills reviewed by Dr. Fulton be certified or authenticated as a condition for his giving an opinion as to the reasonableness and necessity of those services." (Appellants' Br. at 12.) In their reply brief, the Barrixes also argue that "[t]he language of [Rule 413] does not limit the admissibility of medical bills to the two methods relied on by Graves." (Appellants' Reply Br. at 12.) That is, the Barrixes contend that Rule 413 renders medical bills admissible despite our Supreme Court's holding in Cook, supra.

We disagree. What the Barrixes characterize as dicta in the Cook case—that "hearsay and opinion issues" apply to the admissibility of medical bills under Evidence Rule 413, Cook, 796 N.E.2d at 278—is a correct statement of the law. Any number of arguably

relevant items of evidence would be rendered admissible without regard to the trustworthiness of that evidence. The hearsay rules squarely address the question of the reliability of an out-of-court statement, separate and apart from any possible relevance of a given statement to a controversy. Id.

Here, the Barrixes failed to produce authenticated medical bills under Evidence Rule 901, and failed to produce testimony that established the bills' status as business records under Rule 803(6). We cannot conclude that the trial court abused its discretion when it excluded the bills from evidence on that basis.

Nor is the Barrixes' argument availing that Mary "received the bills" and "would have knowledge of the charges made for her care," which presumably would render the bills admissible under Evidence Rule 803(5). The Barrixes failed to bring this issue to the attention of the trial court. They also failed to adduce testimony from Mary that laid any form of foundation for the admissibility of the bills based upon her memory of having received those bills for treatment of injuries that resulted from the collision. Thus, their argument on appeal has been waived. See Orta v. State, 940 N.E.2d 370, 376-77 (Ind. Ct. App. 2011). Moreover, because we conclude that any error was harmless, see infra, no reversible error arose from the trial court's exclusion of the medical bills from evidence.

### Judgment on the Evidence

We turn now to the propriety of the trial court's entry of judgment on the evidence. "The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence" presented at trial. Stowers v. Clinton Cent. School Corp., 855 N.E.2d 739, 747

(Ind. Ct. App. 2006), trans. denied. We use the same standard as that which governs the trial court when it makes its decision. Carr v. Pearman, 860 N.E.2d 863, 871 (Ind. Ct. App. 2007), trans. denied.

> Judgment on the evidence is proper only "where all or some of the issues ... are not supported by sufficient evidence." Ind. Trial Rule 50; Benante v. United Pacific Life Ins. Co., 659 N.E.2d 545 (Ind.1995) (if there is evidence allowing reasonable people to differ as to result, judgment on the evidence is improper). The court looks only to the evidence and the reasonable inferences drawn most favorable to the non-moving party and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. Clark v. Wiegand, 617 N.E.2d 916, 918 (Ind.1993); Bals [v. Verduzco], 600 N.E.2d [1353,] 1357 [(Ind. 1992)].

Kirchoff v. Selby, 703 N.E.2d 644, 648 (Ind. 1998).

The Barrixes sought relief through negligence claims against the Defendants. "The tort of negligence consists of three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach." Kincade v. MAC Corp., 773 N.E.2d 909, 911 (Ind. Ct. App. 2002) (citations omitted), trans. denied. Even assuming the trial court erred in excluding from evidence the medical bills, medical records, and the entirety of Dr. Fulton's deposition testimony, and taking all of that evidence into consideration, we affirm the trial court because the Barrixes failed to adduce sufficient evidence to survive Graves's motion for judgment on the evidence on multiple grounds.

Aside from Dr. Fulton's deposition, the medical records, and the medical bills, the only evidence the Barrixes offered at trial was Mary's testimony in the offer to prove. This testimony is notable for what it lacked rather than what it contained. Specifically, Mary's

13

testimony conveyed only that she was a plaintiff in this case, that she had seen Dr. Fulton once, that prior counsel had helped her arrange the single meeting with Dr. Fulton, and that she had hoped to continue to see Dr. Fulton as a treating physician.

Mary's testimony does not establish any facts necessary to show any duty of care on Graves's part. Her testimony does not give rise to an inference that she was involved in an automobile accident as alleged in the complaint. Her testimony does not give rise to an inference that the automobile accident was a result of Graves breaching its duty of care—and we do not infer that such a breach has occurred without specific facts establishing the breach. Kincade v. MAC Corp., 773 N.E.2d 909, 911 (Ind. Ct. App. 2002) (stating, in the context of summary judgment "all the elements of a negligence action must be supported by specific facts … or reasonable inferences that might be drawn from those facts"). Nor does her testimony permit an inference that she or Joe suffered any other form of harm, such as pain and suffering or lost wages, which has Graves's negligence as its proximate cause.

Simply put, we cannot conclude that the Barrixes adduced even the minimal amount of evidence required to avoid entry of judgment on the evidence in this case. This is true even when we take into consideration Dr. Fulton's deposition and assume that the medical records and bills (with which this Court has not been provided) show an injury as a result of a car accident. Thus, any error that arose from the trial court's rulings on the admissibility of evidence is harmless because the evidence adduced at trial was not sufficient to survive the Defendants' motion for judgment on the evidence on the other necessary elements of the case.

14

Rather than seek a continuance or an interlocutory appeal, the Barrixes, through counsel, effectively consented to entry of judgment on the evidence against them in order to appeal the trial court's evidentiary rulings. Here, the strategy worked to their peril.

## Conclusion

The Barrixes have not demonstrated reversible error as a result of the trial court's exclusion of Dr. Fulton's deposition testimony from evidence, and any such error was invited. The trial court did not abuse its discretion when it excluded Mary's medical bills from evidence. The Barrixes also failed to adduce any evidence giving rise to any inference supporting allegations that Graves had a duty of care toward Mary and breached its duty. We therefore affirm the trial court's entry of judgment on the evidence against the Barrixes.

Affirmed.

RILEY, J., and CRONE, J., concur.