## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2015, 10:04 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Thomas N. Leslie
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Kathleen M. Meek
Justin T. Bowen
Bowen & Associates
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T. M., <br> *Appellant-Defendant,* <br><br> v. <br><br> D.W., <br> *Appellee-Plaintiff* | April 30, 2015 <br><br> Court of Appeals Case No. 48A02-1407-JP-457 <br><br> Appeal from the Madison Circuit Court <br><br> Cause No. 48C02-1307-JP-170 <br><br> The Honorable G. George Pancol, Judge. |

**Friedlander, Judge.**

[1] T.M. (Mother) appeals the trial court's paternity order, which established custody and support. She presents the following restated issues for review:

> 1. Did the trial court abuse its discretion when it refused Mother's request for attorney fees?

2.     Is D.W. (Father) still bound by a preliminary order requiring him to pay the cost of Mother's initial drug testing and evaluation, which he has not paid?

On cross appeal, Father raises the following restated issue:

3.     Did the trial court err in calculating Father's parenting time credit by failing to include all overnights?

We affirm and remand.

Child was born September 30, 2008, and lived with Mother and Father at Father's residence in Anderson until Mother moved out with Child on June 17, 2013. Mother moved her and Child's belongings out of the residence without any notice to Father and while he was at work. Eric Goodwin rented a truck and assisted with the move to Goodwin's home in Franklin, about an hour away. Goodwin and Mother continue to reside together and plan to marry.

On July 17, 2013, Father filed a Consolidated Verified Emergency Petition to Establish Paternity, Child Custody, and Child Support. The trial court held a brief hearing on September 5, 2013, at which the parties stipulated to Father's paternity of Child. In its provisional order, the court granted the parties joint legal custody, Mother primary physical custody, and Father parenting time pursuant to the Indiana Parenting Time Guidelines except that he would have Child every weekend. Per Father's request, the court also ordered the parties to

submit to substance abuse evaluation and drug testing. The court ordered Father to select a provider and pay for these initial costs for both parties.[1]

[5] The final hearing regarding custody and support took place on December 2, 2013 and April 2, 2014. Father presented evidence that he owns his own home and has been employed with the same company for approximately twenty years. He works about fifty hours per week and has an average weekly gross income of $1129. With respect to Mother, evidence was presented that she is a server at a restaurant in Franklin and works varying shifts, including double shifts on the weekends. She grosses about $450 per week. She lives with Goodwin in a home of which he has granted her part ownership.

[6] During her presentation of evidence, Mother testified that Father had not paid for the initial substance abuse evaluation and testing, as previously ordered by the court. She submitted the unpaid bill, which she indicated she continued to receive in the mail. Mother requested that the court order payment by Father. Additionally, Mother submitted evidence regarding the amount of her attorney fees (approximately $16,000). Father stipulated to this evidence without the need for Mother's attorney to testify regarding the amount and its reasonableness. Mother requested that the court order Father to pay her attorney fees.

---

[1] Mother's test results were submitted to the court on October 31, 2013. She tested "negative for over twenty-two drugs, including cocaine, opiates, synthetic opioids (methadone), amphetamines and others." *Appellant's Appendix* at 10.

[7]     At the conclusion of the hearing, the trial court took the matter under advisement and gave the parties thirty days to file proposed findings and conclusions. The CCS reflects that the parties filed proposed orders, but the filings have not been included in the record before us. On May 12, 2014, the trial court issued its order. The court left the custody arrangement unchanged, ordered Father to pay $112 per week in child support, determined the arrearage, and directed the parties to pay their own attorney fees. Mother filed a motion to correct error on June 5, 2014, which was summarily denied. Mother now appeals.

[8]     When a trial court issues specific findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, as in this case, we apply a two-tiered standard of review. Without reweighing the evidence or assessing the credibility of witnesses, we must determine "whether the evidence supports the findings and whether the findings support the judgment." *Tompa v. Tompa,* 867 N.E.2d 158, 163 (Ind. Ct. App. 2007). We will not set aside the trial court's findings or conclusions unless they are clearly erroneous—that is, if they are unsupported by any facts and inferences contained in the record. *Tompa v. Tompa,* 867 N.E.2d 158. We will find the judgment to be clearly erroneous if we are left with a firm conviction that there has been a mistake. *Id.* Further, if the findings and conclusions entered by the trial court are clearly inconsistent with the judgment, "the decision must be set aside regardless of whether there was evidence adduced at trial which would have been sufficient to sustain the

decision." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008) (quoting *McGinley-Ellis v. Ellis*, 638 N.E.2d 1249, 1252 (Ind. 1994)).

1.

[9] Mother claims that the trial court erred in rejecting her request to order Father to pay her attorney fees and notes that the court made no findings of fact supporting its decision. According to Mother, she is entitled to attorney fees due to the large disparity of income between the parties.[2]

[10] When determining whether to award attorney fees, a trial court must consider the resources of the parties, their relative earning ability, and other factors bearing on the reasonableness of the award. *See Connolly v. Connolly*, 952 N.E.2d 203 (Ind. Ct. App. 2011). We review a trial court's decision regarding attorney fees for an abuse of discretion. *Id.* Further, "a trial court is not required to give reasons for its determination." *Id*. at 208.[3]

[11] Ind. Code Ann. § 31-14-18-2(a) (West, Westlaw current with all legislation of the 2015 1st Regular Session of the 119th General Assembly effective through

---

[2] Mother also argues that Father's conduct during the proceedings created additional legal expenses for her. She asserts that "while there was no official misconduct, the lengthiness of these proceedings was brought on by Father's lack of evidence and failure to adequately present his case for want of expert opinion testimony." *Appellant's Brief* at 13. We find this argument, which was not raised below, unsupported by the record and meritless.

[3] In support of her apparent assertion that the trial court was required to explain its decision, Mother relies on *Masters v. Masters*, 20 N.E.3d 158 (Ind. Ct. App. 2014). We observe, however, that the Indiana Supreme Court granted transfer in *Masters* on April 2, 2015. Accordingly, the appeals court decision has been vacated and has no precedential value. *See Barth v. Barth*, 693 N.E.2d 954 (Ind. Ct. App. 1998), *trans. denied*.

March 24, 2015) provides that the trial court *may* order a party to pay a reasonable amount for the opposing party's attorney fees.[4] The statute, however, does not affirmatively require the trial court to award attorney fees. As we have previously observed in this context, "[t]here is no abuse of discretion for the trial court not to do that which it is not required to do." *Russell v. Russell,* 693 N.E.2d 980, 984 (Ind. Ct. App. 1998), *trans. denied. See also Tompa v. Tompa,* 867 N.E.2d 158.

[12] Mother argues that she is entitled to attorney fees because Father's income significantly exceeds hers. "While disparity of income may be considered in awarding attorney fees, a trial court is not required to award fees based on disparity of income alone." *Russell v. Russell,* 693 N.E.2d at 984. Because the trial court was not affirmatively required to award attorney fees under I.C. § 31-14-18-2, it did not abuse its discretion by denying Mother's request.

2.

[13] Mother contends that the trial court should have included in its final order a judgment for the court-ordered drug testing and evaluation costs that Father had been previously ordered to pay, yet remained unpaid at the time of the final hearing.[5] Father, however, claims that his obligation to pay under the

---

[4] This statute is substantially similar to that applied in the dissolution context. Accordingly, we may rely on authority from both paternity and dissolution cases.

[5] Mother's appellate and reply briefs both have a page missing in this portion of her argument. We advise counsel to be more cautious before filing briefs before this or any other court.

provisional order was "merged and extinguished by the final Order." *Appellee's Brief* at 14.

[14] In general, a provisional order terminates when the final decree is entered. *Mosser v. Mosser*, 729 N.E.2d 197 (Ind. Ct. App. 2000). "Nevertheless, an obligation accrued prior to the final decree survives." *Id*. at 200 n.3.

[15] Here, the provisional order provided, with respect to drug testing, as follows: "The parties are to both submit to substance abuse evaluation and drug testing. The Father will pay the initial cost of these evaluations and tests. The Father will select the provider. The Mother will then make arrangements and appointments within thirty days." *Appellant's Appendix* at 6. The evidence establishes that after Father selected the provider, Mother completed the initial evaluation and testing on October 30, 2013.[6] Five months later, Mother testified at the final hearing that she continued to receive unpaid bills related to this testing, and she submitted into evidence one such bill that she had received in the mail. Mother asked the trial court to order Father to pay the amount due for the initial drug testing and evaluation.

[16] The bill from Ameritox reflects laboratory services received by Mother on October 30, 2013, in the total amount of $1012.35. Father claims that his

---

[6] Father notes that Mother's drug testing occurred thirty-four days after he notified her of the provider. He claims that the delayed testing "voided even Father's minimal requirement to be initially responsible for the cost." *Appellee's Brief* at 16. Father did not assert this argument below and offers no authority for it on appeal. Moreover, we observe that the order is vague, requiring Mother to "make arrangements and appointments within thirty days" rather than requiring her to submit to testing within that time.

hearsay objection to this evidence was improperly rejected by the trial court because the bill was submitted to establish the amount due. Regardless of the amount, Mother's testimony establishes that Father failed to pay the bill as ordered by the trial court. Further, our Supreme Court has indicated that "[m]edical bills already charged can usually be admitted over any hearsay objection either through testimony of the supplier… or through testimony of the patient". *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 278 (Ind. 2003). *Cf. Barrix v. Jackson*, 973 N.E.2d 22, 29 (Ind. Ct. App. 2012) (bills inadmissible hearsay where not admitted as a business record and proponents "also failed to adduce testimony from [patient] that laid any form of foundation for admissibility of the bills based upon her memory of having received those bills for treatment"), *trans. denied*.

[17] We remand this cause to the trial court so that it may amend its final decree to include an order directing Father to pay the costs of Mother's initial drug testing and evaluation.

3.

[18] On cross appeal, Father contends that the trial court erred in calculating child support because it only credited him with 102-105 overnights per year. According to Father, the parenting time credit should have been calculated using 134 overnights.

[19] A trial court's calculation of child support under the Indiana Child Support Guidelines (the Guidelines) is presumptively valid. *Young v. Young*, 891 N.E.2d

1045. We will reverse a trial court's decision with respect to child support matters only if it is clearly erroneous or contrary to law. *Id.*

[20] Indiana Child Support Guideline 6 provides that "[a] credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." The commentary to Guideline 6 provides that the computation of this credit "will require a determination of the annual number of overnights of parenting time exercised by the parent who is to pay child support, the use of the standard Child Support Obligation Worksheet, a Parenting Time Table, and a Parenting Time Credit Worksheet." The commentary further provides that a non-custodial parent exercising parenting time pursuant to the Guidelines, without extending the weeknight period into an overnight, will have approximately 98 overnights.

[21] In this case, the trial court determined that Father's annual overnights will be between 101 and 105, as he had been awarded parenting time in excess of the Guidelines (every weekend rather than every other weekend). Father's assertion that he should have been credited with 134 overnights is neither supported by the record nor adequately explained on appeal.

[22] We observe that Father has failed to provide us with the proposed child support worksheet, parenting time credit worksheet, or findings that he submitted to the trial court, and the number of overnights claimed by Father was not addressed at the hearing. On appeal, Father supports his claim that he is entitled to 134 overnights with a simple footnote:

> The number of overnights for the extra weekend has been adjusted to account for Mother's summer and holiday parenting time, of approximately eight weeks. The Court can take judicial notice of the fact of the number of overnights awarded to Father. Ind. Evidence Rule 201.

*Appellee's Brief* at 18 n.1.

[23] Father's explanation in his appellate brief as to how he calculates a parenting time credit based on 134 overnights is entirely inadequate. Additionally, our own crude calculations, based on admittedly incomplete information, result in overnights closer to the trial court's determination than Father's. With the limited record before us, we cannot conclude that the trial court's determination regarding overnights is clearly against the logic and effect of the facts and circumstances before it. Father has failed to establish error.

[24] We affirm and remand.

Kirsch, J., and Crone, J., concur.