Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 22 2014, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DORI NEWMAN**
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TABITHA EDWARDS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | No. 29A02-1305-CR-444 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee. ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Gail Bardach
Cause No. 29D06-1208-FD-8299

**January 22, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

MATHIAS, Judge

Tabitha Edwards ("Edwards") was convicted in Hamilton Superior Court of Class A misdemeanor operating a vehicle while intoxicated endangering a person and Class D felony operating a vehicle while intoxicated with a prior within five years. Edwards appeals and argues that the trial court abused its discretion in excluding certain evidence proffered by the defense.

We affirm.

**Facts and Procedural History**

On August 30, 2012, around 1:45 a.m., Fishers Police Sergeant Mike Janes ("Sergeant Janes") was patrolling in his cruiser on I-69 southbound near the 116th Street exit, in a construction zone with a speed limit of 55 miles per hour. He noticed in his rearview mirror that a vehicle was approaching him at a high rate of speed. He estimated that this vehicle was traveling well in excess of the speed limit and, after activating his rear radar unit, confirmed that the car was traveling at 75 miles per hour. Sergeant Janes then initiated a traffic stop of the vehicle. He approached the driver's side and identified Edwards as the driver of the vehicle and its sole occupant. While Sergeant Janes was speaking with Edwards, he noticed that her dexterity was poor and that her eyes were red and watery. He asked Edwards if she had consumed any alcohol, and she stated that she had begun drinking around 7:00 p.m. that night and had stopped drinking around 9:00 p.m.

Sergeant Janes then radioed dispatch for another unit to assist him in administering to Edwards field sobriety tests. Shortly thereafter, when two additional officers arrived at

the scene of the traffic stop, Sergeant Janes asked Edwards to exit her vehicle. He noticed that, as she did so, she staggered and leaned against the car.

Sergeant Janes first administered the horizontal gaze nystagmus test, which Edwards failed. Sergeant Janes then initiated the nine-step field sobriety test, but Edwards indicated that one of her legs was shorter than the other, and Sergeant Janes did not require her to complete the test. Sergeant Janes next administered two divided attention tests—the first required Edwards to recite the alphabet beginning with the letter C and ending with the letter N; the second required Edwards to count backwards from 103 to 78. During the first test, Edwards skipped the letter M. Edwards successfully completed the second test.

Edwards then agreed to submit to a blood test. Sergeant Janes, who is also a certified paramedic authorized to administer blood tests, transported Edwards to the Fishers Police Department and drew her blood at 2:41 a.m. The blood test results indicated that Edwards's blood alcohol content was .09.

On August 30, 2012, the State charged Edwards with Count I, operating a vehicle while intoxicated endangering a person, a Class A misdemeanor. On the day of trial, April 9, 2013, the State amended the charging information to include Count II, operating a vehicle with an alcohol concentration equivalent ("ACE") of .08 or more, a Class C misdemeanor; Count III, operating a vehicle while intoxicated with a prior within five years, a Class D felony; and Count IV, operating a vehicle with an ACE of .08 or more with a prior within five years.

At her jury trial, Edwards presented the testimony of pharmacist Dr. John Belloto

3

("Dr. Belloto"). Dr. Belloto testified that he had reviewed Edwards's gas chromatograms and that the chromatograms indicated to him that fermentation had taken place such that the results of the blood test may have been inaccurate and that this fermentation can cause a blood test margin of error of up to twenty-five percent.

During Dr. Belloto's testimony, the trial court refused to admit four documents offered by Edwards: Defendant's Exhibits B, C, D, and E. Edwards argued that, although the documents contained hearsay, they should be admitted under the business records hearsay exception, since they were produced by the Indiana Department of Toxicology. The trial court did not admit the documents, finding that they contained inadmissible hearsay and were not properly authenticated. The court stated:

> [Dr. Belloto] did not say anything at all about the Department of Toxicology. He said that he reviewed these documents . . . He did not say where they came from.
>
> * * *
>
> They have not been adequately identified. There is no foundation laid for their admissibility at this point. I'm not saying you can't do that, but you haven't done it yet.

Tr. pp. 245-46. Edwards, however, failed to elicit testimony from Dr. Belloto sufficient to authenticate the documents.

The jury found Edwards guilty on Counts I and II. Edwards pleaded guilty to counts III and IV. Due to concerns related to double jeopardy, the trial court entered judgments of conviction on Counts I and III only. On May 7, 2013, the trial court ordered Edwards to serve three years in the Department of Correction, with 185 days executed and 180 days served on home detention with electronic monitoring. The trial court suspended the remaining 730 days of Edwards's sentence to probation.

4

Edwards now appeals.

**Discussion and Decision**

Edwards claims that the trial court erred in excluding the four documents she sought to admit through her expert witness, Dr. Belloto. Questions regarding the admission or exclusion of evidence are within the discretion of the trial judge and are reviewed on appeal only for an abuse of that discretion. Wells v. State, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009), trans. denied. The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. Id.

A testifying expert witness may offer his opinion based in part upon documents which have not been admitted and which contain inadmissible hearsay where that expert has sufficient expertise to determine the accuracy and reliability of the information, the document is of the type which is normally found to be reliable, and the information contained in the document is the type customarily relied upon by an expert in the practice of his profession. See Phillips v. State, 179 Ind. App. 517, 523-24, 386 N.E.2d 704, 708 (1979); Faulkner v. Markkay of Indiana, Inc., 663 N.E.2d 798, 800 (Ind. Ct. App. 1996). However, the Rules of Evidence do not permit the admission of documents relied upon by an expert witness to prove the truth of matters they contain if those documents are otherwise inadmissible. Faulkner, 663 N.E.2d at 800. In other words, an expert witness's reliance on hearsay statements may not simply be used as means for presenting documents containing inadmissible hearsay to a jury.

Edwards contends that the trial court abused its discretion in excluding the

5

documents, arguing that "the rule of hearsay does not bar the evidence that Edwards tried to admit because the witness was an expert and can form opinions based on reliable hearsay pursuant to Indiana Rules of Evidence 702 and 703." Appellant's Br. at 7. We disagree.

An offer of proof is required to challenge on appeal a trial court's ruling denying admission into evidence proffered testimony or other information. Ind. R. Evid. 103(a)(2). "The purpose of an offer to prove is to enable the trial court and this court to determine the admissibility and relevance of the proffered evidence." Carter v. State, 932 N.E.2d 1284, 1287 (Ind. Ct. App. 2010). Failure to make an offer of proof waives appellate review. Id. Here, Edwards did not make an offer of proof sufficient to preserve the issue for appeal. Therefore, Edwards's claim of error is waived.

Waiver notwithstanding, Edwards's claim still fails. Authentication is a condition precedent to admissibility. See Ind. R. Evid. 901(1). The requirement of authentication is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Id. Here, Edwards asserts that, though Exhibits B, C, D, and E contained hearsay,[1] the trial court improperly excluded the documents because the documents were admissible under the business records hearsay exception pursuant to Indiana Evidence Rule 803(6).[2] However, at trial, Edwards, in attempting to introduce

---

[1] Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible unless it falls under a hearsay exception. Ind. R. Evid. 801; see also Jenkins v. State, 725 N.E.2d 66, 68 (Ind. 2000) (citing Ind. R. Evid. 802). However, hearsay can be admissible under one of several exceptions, including the business records exception. Ind. R. Evid. 803.

[2] Rule 803(6) provides that "[a] record of an act, event, condition, opinion, or diagnosis [is admissible hearsay] if:

6

the documents during Dr. Belloto's testimony, failed to submit an affidavit or elicit any testimony demonstrating that Exhibit B, C, D, or E were business records maintained by the Indiana Department of Toxicology. Rather, Dr. Belloto merely testified that he had received the documents from Edwards's counsel and that he assumed that Edwards's counsel had received the documents from the State. Furthermore, the documents themselves did not contain any information proving that they were produced by the Indiana Department of Toxicology. Without any indication of their authenticity, the trial court properly refused to admit Exhibits B, C, D, and E. Therefore, under these facts and circumstances, we conclude that the trial court did not abuse its discretion when it refused to admit the documents Edwards sought to introduce during Dr. Belloto's testimony.

### Conclusion

For all of these reasons, we conclude that the trial court did not abuse its discretion in excluding the documents proffered by Edwards at trial.

Affirmed.

BRADFORD, J., and PYLE, J., concur.

---

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C) making the record was a regular practice of that activity;
(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(9) or (10) or with a statute permitting certification; and
(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.